# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Dantlee A. Smith, | ) | |
| | ) | |
| Plaintiff, | ) | No. 8:22-cv-01467-DCN-JDA |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Warden Kenneth Nelson; Cpt. Tony Vela; | ) | |
| Major Kenneth Greggs; Classification | ) | |
| Stacy Richardson; Sgt. Thomas; | ) | |
| Cpt. Livingston; A.W. Arthur Fredricks; | ) | |
| and Cpt. Spikes | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Jacquelyn Austin's Report and Recommendation ("R&R"), ECF No. 54, that the court grant defendants Warden Kenneth Nelson ("Warden Nelson"), Associate Warden Arthur Fredericks ("Fredericks"),[1] Major Kenneth Greggs ("Maj. Greggs"), Sergeant Rocky L. Thomas ("Sgt. Thomas"), Captain Livingston ("Cpt. Livingston"),[2] Classification Stacey Richardson ("Richardson"),[3] Captain Anthony Spikes ("Cpt. Spikes"), and Captain Tony Vela's ("Cpt. Vela")[4]

---

[1] This is how Fredericks spells his name in the affidavit he submitted to the court in support of defendants' motion. ECF No. 41-3.

[2] Cpt. Livingston was the shift captain on the day Smith was assaulted and Sgt. Thomas was a wing officer on Cpt. Livingston's shift. ECF No. 1-1 at 2. Smith provides no additional facts as to Cpt. Livingston's involvement.

[3] Smith details that Richardson works in classification but otherwise provides no additional facts as to her involvement in any of the actions which underly this complaint. See ECF No. 1-1 at 1.

[4] Cpt. Vela was purportedly the shift captain on the day Smith went to the hospital. ECF No. 1-1 at 1. Smith provides no additional facts as to Cpt. Vela's involvement.

1

(collectively, "defendants") motion for summary judgment , ECF No. 41. For the reasons set forth below, the court adopts the R&R and grants defendants' motion.

## I.  BACKGROUND

Plaintiff Dantlee A. Smith ("Smith") is a prisoner in the custody of the South Carolina Department of Corrections. ECF No. 1 at 2. The events giving rise to this action took place while Smith was incarcerated at Broad River Correctional Institution ("BRCI"). Id.; ECF No. 1-1 at 3. In general, Smith claims that Warden Nelson, Fredericks, and Maj. Greggs, permit an unsafe environment at BRCI in which gang members are freely permitted to harass and injure other inmates without consequences. ECF No. 1-1 at 2. According to Smith, gang members are able to commit these crimes because prison officers leave unaffiliated inmates' cells unlocked and permit the gang members to possess weapons and other contraband. Id.

Smith claims that this environment led to him being injured on two specific occasions. The first of these was an assault, which Smith claims took place on September 20, 2021 (the "September 20 assault").[5] ECF Nos. 1-1 at 2; 48 at 3. Smith alleges that, leading up to the assault, he made multiple entries in the prison kiosk system, in which he noted his safety concerns and requested that he be moved to another part of the prison, throughout August and early September 2021. ECF No. 48 at 2–3. He also claims that, on September 16, 2021, his mother called Fredericks to personally express her safety concerns and request that someone check on her son. ECF Nos. 1-1 at 3; 48 at 3. Smith avers that, despite these warnings, he was never given adequate protection and

---

[5] In his original complaint, Smith could not remember whether this assault took place on September 19 or 20. ECF Nos. 1 at 5; 1-1 at 2. However, he claims that it was on September 20 in his response to defendants' motion. ECF No. 48 at 3.

this alleged failure on the part of prison officials led to the September 20 assault. ECF Nos. 1-1 at 2; 48 at 3.

According to Smith, Sgt. Thomas left Smith's cell door open so that a gang member could enter and assault Smith. Id. at 2–3. Smith alleges that, while bloodied on the floor of his cell after the assault, he told Sgt. Thomas that he was injured and needed medical attention. Id. However, Smith claims that, despite Sgt. Thomas's assurance that he would alert his superiors, no one came to check on him until Lieutenant Monika Barr ("Lt. Barr")[6] opened his cell door three days later. Id. Lt. Barr then escorted Smith from his cell to receive medical attention. Id. Smith contends that, while receiving medical attention, he told Fredericks that he feared he would be killed by a gang if he were not either given protective custody or transferred to another facility. Id. at 3.

Smith was then moved to Prisma Richland Memorial Hospital, where he received surgery for treatment of his injuries. Id.; ECF No. 41-3 at 8. Nevertheless, Smith contends that he was left permanently disfigured from his injuries due to a delay in his receiving medical treatment. ECF No. 1-1 at 3. He also claims that that the surgeon prescribed pain medication, wax to protect his mouth from wiring implanted during surgery, and Ensure drinks for a liquid diet. Id. at 4. But he says that, despite numerous requests, he was never given the pain medication or wax and did not receive the Ensure supplements for several weeks after being discharged back to BRCI and that he lost a significant amount of weight as a result. Id.

Smith further claims that Lt. Barr did not inventory his property before he was transported to the hospital for surgery. Id. He says that his property was consequently

---

[6] Lt. Barr is not named as a defendant in this action. See ECF No. 1-1 at 1.

3

stolen in his absence and that he was forced to purchase new sheets, uniforms, t-shirts, boxers, socks, hygiene equipment, shoes, and other items. Id. Smith also contends that he reiterated his safety concerns to various prison officials after returning to BRCI from surgery but that his transfer and protective custody requests continued to be denied. Id. at 3.

The second incident on which Smith bases his claims took place on March 15, 2022, and began as a fight between Smith and another inmate, Joshua Thomas ("inmate Thomas"). ECF Nos. 1-1 at 5; 48 at 6. Smith claims he was locked in his cell after the fight was broken up by Lieutenant Harry Shuler ("Lt. Shuler").[7] ECF No. 1-1 at 5. Lt. Shuler then notified Cpt. Spikes that he had seen Smith holding a knife, and Cpt. Spikes responded. ECF No. 41-2 at 6, 10. Cpt. Spikes ordered Smith to release his weapon, id.; ECF No. 48 at 7, but Smith claims he had no weapon, ECF Nos. 1-1 at 5; 48 at 6. According to Smith, Cpt. Spikes then discharged "a lot of spray" into Smith's cell, ECF No. 48 at 7, and this caused him to choke and gag on the floor for several minutes, during which time he begged Cpt. Spikes to open his cell door. Id. Cpt. Spikes then opened the door, and Smith was removed to another part of the prison, where he claims his glasses were taken out of his pocket and stepped on. Id. at 8.

Based on these factual allegations, Smith filed a complaint on May 6, 2022, which asserted causes of action pursuant to 42 U.S.C. § 1983 for failure to protect, deliberate indifference, negligence/gross negligence, loss of property, and excessive force. ECF Nos. 1 at 4; 1-1. On November 4, 2022, defendants filed their motion for summary judgment on each of Smith's claims, ECF No. 41, and the magistrate judge issued her

---

[7] Lt. Schuler is not named as a defendant in this action. See ECF No. 1-1 at 1.

R&R on July 18, 2023, in which she recommended granting defendants' motion, ECF No. 54, R&R. Smith objected to the R&R on August 2, 2023. ECF No. 57. The matter is fully briefed and ripe for this court's review.

## II. STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

### B. Pro Se Litigants

Smith is proceeding pro se in this case. Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970, 99 (1978). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a

5

potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### C. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.  DISCUSSION

The magistrate judge liberally construed Smith's pleadings to allege five causes of action: "failure to protect related to the September 2021 assault; deliberate indifference

to medical needs; lost property; excessive force related to the March 2022 use of chemical munitions; and negligence and/or gross negligence related to denial of pain medication, food supplements, and dental wax," R&R at 8–9 (citing ECF Nos. 1; 1-1), and Smith does not object to this assessment of his claims, see ECF No. 57.

Despite the magistrate judge's recommendation that defendants' motion for summary judgment be granted as to each of Smith's claims, Smith focuses his objections exclusively on his claims for failure to protect claim against Fredericks and his excessive force claim against Cpt. Spikes.[8]  ECF No. 57 at 2, 3.  As such, the court begins by looking at the portions of the R&R to which Smith does not object, and the court reviews these portions of the R&R for clear error.  See Diamond, 416 F.3d at 315–16.  A review of the record indicates that the R&R accurately summarized this case and the applicable law.  Finding no clear error, the court adopts those portions of the R&R and grants defendants' motion as to each of those causes of action.[9]  The court will now review de

---

[8] While it is not clear from the pleadings, the magistrate judge interpreted Smith's claim for failure to protect as being directed solely at Sgt. Thomas and Fredericks.  R&R at 15.  She then recommended granting summary judgment on the claim against Sgt. Thomas because (1) Sgt. Thomas submitted an affidavit in which he denied knowledge of Smith's injuries and asserted that he did not permit another inmate to enter Smith's cell, ECF No. 45 ¶¶ 3–4; and (2) because Smith, himself, indicated that he could have been mistaken when he claimed Sgt. Thomas was working on the day of the assault, ECF No. 48 at 3.  Smith does not object to either the interpretation that this claim was directed solely at Sgt. Thomas and Fredericks, nor does he object to granting summary judgment on the claim against Sgt. Thomas.  ECF No. 47.  Likewise, he does not object to the interpretation that his excessive force claim is directed solely at Cpt. Spikes.  Id.

[9] For the sake of clarity, the court grants summary judgment on Smith's claims of deliberate indifference to medical needs, lost property, and negligence and/or gross negligence related to denial of pain medication, food supplements, and dental wax.  The court also grants summary judgement on Smith's failure to protect claim against Sgt. Thomas.

Moreover, the magistrate judge found that summary judgment should be granted as to all claims asserted against Warden Nelson, Maj. Greggs, Cpt. Livingston, Richardson, and Cpt. Vela because Smith has failed to plead facts showing that these

novo the magistrate judge's conclusions regarding Smith's claims against Fredericks for failure to protect and against Cpt. Spikes for excessive force and Smith's respective objections.

### A. Failure to Protect

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). To establish a failure-to-protect claim, an inmate must first show "that he was 'incarcerated under conditions posing a substantial risk of serious harm.'" Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015) (quoting Farmer, 511 U.S. at 834). Next, the inmate must show that the defendant acted with "'deliberate indifference' to inmate health or safety." Id. (quoting Farmer, 511 U.S. at 834). Deliberate indifference requires "'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" Id. (alternation in original) (quoting Farmer, 511 U.S. at 835).

There is a two-prong test to establish deliberate indifference: "the evidence must show that the official in question subjectively recognized a substantial risk of harm," and

---

defendants were personally involved in any of the events giving rise to any of Smith's claims. Id. at 9. Smith does not object to the magistrate judge's conclusion that his failure to protect claim and excessive force claim are not directed at these defendants, nor does he object to the magistrate judge's recommendation that summary judgment be granted on all causes of action against these defendants. ECF No. 57. Consequently, to the extent Smith does implicate Warden Nelson, Maj. Greggs, Cpt. Livingston, Richardson, or Cpt. Vela in either his failure to protect claim or excessive force claim, the court reviews the magistrate judge's recommendation on such claims for clear error. See Diamond, 416 F.3d at 315–16. The court finds no clear error with this portion of the R&R and grants summary judgment on all claims asserted against Warden Nelson, Maj. Greggs, Cpt. Livingston, Richardson, and Cpt. Vela.

"subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (quoting Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)). The plaintiff must show "actual knowledge as to both elements." Id. Thus, plaintiffs "must do more than allege a generalized concern for his safety and welfare" to prevail on a failure to protect claim. Drayton v. Cohen, 2012 WL 666839, at *7 (D.S.C. Feb. 29, 2012), aff'd, 474 F. App'x 991 (4th Cir. 2012). Importantly, however, a prison official's subjective knowledge can be proven by circumstantial evidence, Makdessi, 789 F.3d at 133, and "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious," Farmer, 511 U.S. at 842.

Smith's failure to protect claim is based on the events surrounding his September 20 assault. See ECF Nos. 1-1 at 3; 57 at 2. He specifically argues that he is a level-two custody inmate and should not have been assigned to a closed custody dorm in the first place and that prison officers should have heeded the concerns he and his mother expressed regarding his safety prior to the assault and should have moved him to a safer area in the prison. ECF Nos. 1-1 at 4–5; 48 at 1, 4–5.

Magistrate Judge Austin construed Smith's claim against Fredericks as being based on Fredericks' alleged failure "to move [Smith] from his cell after his mother called to report that he was in fear." R&R at 15. She considered the claim against Fredericks in two parts. First, she considered defendants' argument that Smith did not demonstrate that Fredericks was personally involved in conduct giving rise to a violation of the Eighth Amendment. R&R at 12–13. Second, she considered their argument that Smith has not shown that "Fredericks was aware of facts from which the inference could

9

be drawn that a substantial risk of serious harm existed and that Fredericks actually drew that inference." Id. at 15. She recommended granting summary judgment based on the latter.

As for Fredericks's personal involvement, defendants claimed that, at most, Smith has alleged that Fredericks allowed an unsafe environment in which inmates were permitted to have weapons and contraband. ECF No. 41-1 at 9–10. They further asserted that Smith has not produced evidence to support this allegation, and they point to an affidavit in which Fredericks described his efforts to prevent inmates from having weapons and to ensure a safe environment at BRCI. Id. (citing ECF No. 41-3 ¶ 6). However, as the magistrate judge correctly noted, Smith's claim against Fredericks is also based on Fredericks' alleged failure to provide additional security after Fredericks spoke with Smith's mother about Smith's safety concerns, ECF Nos. 1 at 4; 1-1 at 3, and in his affidavit, Fredericks admitted to having spoken with Smith's mother on September 16, 2021, ECF No. 41-3 ¶ 3. Consequently, as the magistrate judge correctly found, defendants' argument that there is no evidence to demonstrate Fredericks was personally involved in the events giving rise to Smith's claim is unpersuasive.

Thus, the court is tasked with determining whether Fredericks "subjectively recognized a substantial risk of harm and subjectively recognized that his actions were inappropriate in light of that risk." See Parrish, 372 F.3d at 303. The magistrate judge answered this question in the negative and recommended granting summary judgment accordingly. R&R at 15. In Smith's objections to the magistrate judge's recommendation, Smith merely reiterates his claim that he made various kiosk requests explaining his safety concerns, that his mother called Fredericks to discuss safety

concerns, and that Lt. Barr did not check on him until several days after both the assault and the phone call between Fredericks and Smith's mother. ECF No. 57 at 2. Smith previously asserted these same facts in his response to defendants' motion, and they were considered by the magistrate judge in her formulation of the R&R. See ECF Nos. 48 at 1–2; 54 at 15–16. To the extent Smith's objections are sufficiently clear to warrant de novo review,[10] the court finds that the magistrate judge correctly applied the facts and law in this case for the reasons set forth below.

The court is unpersuaded that Fredericks's phone call with Smith's mother, standing alone, shows that Fredericks subjectively recognized a substantial risk of harm. While Fredericks admitted to having had the conversation with Smith's mother on September 16, 2021, he also explained that he routinely has conversations with inmates' family members, and he could not recall what was discussed during this particular phone call. ECF No. 41-3 ¶ 3. Thus, there is no evidence, and Smith has not alleged, that anything discussed during the phone call should have put Fredericks on notice of anything more than "a generalized concern for [Smith's] safety and welfare." Drayton,

---

[10] "[A] mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Lee v. Saul, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019) (quoting Nichols v. Colvin, 100 F. Supp. 3d 487, 497 (E.D. Va. 2015)); see also Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008) ("Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection makes the initial reference to the magistrate useless.") (alterations adopted); Demarest v. Horry Cnty. Police Dep't, 2020 WL 4506273, at *1 (D.S.C. Aug. 5, 2020) ("[M]erely reiterating the same arguments presented to a magistrate judge does not constitute a specific objection warranting de novo review."). At the same time, "objections need not be novel to be sufficiently specific," and objections which merely restate a litigant's claims may still be specific if they are clear enough to "alert[] the district court that [the litigant] believed the magistrate judge erred in recommending dismissal of those claims." Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (second alteration in original) (quoting Martin v. Duffy, 858 F.3d 239, 245, 246 (4th Cir. 2017)).

2012 WL 666839, at *7.  As such, Smith's allegations about the phone call between Fredericks and Smith's mother are insufficient to support Smith's failure to protect claim. See id.

What's more, immediately after speaking with Smith's mother, Fredericks sent an email to other prison officers requesting that someone check on Smith.  ECF No. 41-3 at 5.  Consequently, even if Smith were able to show that Fredericks was aware of particularized safety concerns, he has not alleged how Fredericks's response was insufficient to address those concerns—that is, he has not met his burden of demonstrating that Fredericks was subjectively aware that his response was inappropriate in light of the risk of harm.  See Parrish, 372 F.3d at 303 ("[I]t is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient.").  Instead, Smith merely claims that, despite Fredericks's email, nobody checked in on him until Lt. Barr came to his cell on September 23—three days after the assault and seven days after Fredericks sent the email.  ECF Nos. 48 at 5; 57 at 2.  Even if this is the case, he has not alleged that the delay was caused by Fredericks.  See ECF Nos. 1; 1-1.

Likewise, even if Smith stated safety concerns in his various kiosk requests before the assault, Smith has not demonstrated that Fredericks ever personally received those requests.  The only instance Smith mentions in his complaint in which he spoke directly with Fredericks is when he claimed that he expressed his safety concerns to Fredericks while he was in medical, before being transported to the hospital for surgery.  ECF No. 1-1 at 3.  However, this conversation occurred after the assault.  Id.  Consequently, none of these allegations support a finding that the assault was the result of Fredericks acting with

deliberate indifference toward Smith.  See Parrish, 372 F.3d at 302 ("Deliberate indifference is a very high standard . . . [a]n officer is deliberately indifferent to a substantial risk of harm to a detainee when that officer 'knows of and disregards' that risk." (citations omitted)).  Accordingly, the court adopts the R&R and grants defendants' motion as to Smith's failure to protect claim as asserted against Fredericks.

### B. Excessive Force

Smith's excessive force claim against Cpt. Spikes is based on the use of chemical munitions against him following the altercation he had with inmate Thomas on March 15, 2022.  ECF No. 1-1 at 5.  Defendants argued that use of the chemical munitions against Smith in this circumstance was not excessive force as a matter of law.  ECF No. 41-1 at 8–9.  The magistrate judge agreed with defendants on this point and recommended granting summary judgement on this claim.  R&R at 22, 26.  In so finding, the magistrate judge relied heavily on incident reports submitted by Cpt. Spikes and Lt. Shuler and on Cpt. Spikes' affidavit testimony.  See id. at 22–26.  Smith objects and argues that there are various problems with the incident reports, which indicate that they may be inaccurate.  ECF No. 57 at 5.  The court sets forth the legal standard and thereafter reviews the R&R recommendation and the parties' arguments in turn.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements.  First, a claimant must meet a "heavy burden" to satisfy the subjective component, Whitley v. Albers, 475 U.S. 312, 321 (1986), for which the claimant must show that the force used by the corrections

officers "inflicted unnecessary and wanton pain and suffering," Hudson v. McMillian, 503 U.S. 1, 6 (1993). In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Hudson, 503 U.S. at 6 (quoting Whitley, 475 U.S. at 320–21).

When evaluating the subjective component, courts apply "a non-exclusive, four-factor balancing test," known as the Whitley factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts to temper the severity of a forceful response.

Thompson v. Virginia, 878 F.3d 89, 99 (4th Cir. 2017); accord Whitley, 475 U.S. at 320–21. "When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain." Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (internal quotations omitted) (emphasis added).

Second, the claimant must meet the objective component, which concerns whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation. Hudson, 503 U.S. at 2. The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . ." Wilkins v. Graddy, 559 U.S. 34, 37 (2010) (internal quotation marks omitted). In determining whether a complaint states a claim for excessive force, the "core judicial inquiry" does not concern the extent of the injury but rather the nature of the force—"specifically, whether it was

14

nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Id. at 39 (quoting Hudson, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9; see Wilkins, 559 U.S. at 38 (holding that an inmate who was the victim of excessive force did not lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury").

However, the extent of injury suffered by the inmate is still relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force plausibly could have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied, Wilkins, 559 U.S. at 37 (rejecting the notion that an excessive force claim involving only de minimis injury is subject to automatic dismissal). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. (internal quotation marks omitted); see Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (quoting Hudson, 503 U.S. at 9)). Nonetheless, the Supreme Court has cautioned that "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 559 U.S. at 38.

Lt. Shuler's report describes that "Smith ran up on Inmate Thomas . . . and started hitting with his right hand." ECF No. 41-2 at 6. It then describes how Lt. Shuler broke up the fight and ordered Smith back to his cell and how he noticed that Smith had a shank in his hand after he entered his cell. Id. The report indicates that Lt. Shuler ordered Smith to relinquish his weapon and that Smith refused to do so. Id. The report then concludes by noting that Lt. Shuler went to check on inmate Thomas in medical, who appeared to have been stabbed "with something sharp." Id.

Cpt. Spikes's report similarly details how he responded after he was notified by Lt. Shuler about the fight between Smith and inmate Thomas. Id. at 10. The relevant portions of Cpt. Spikes's account in the report read as follows:

> I was notified by Lt. Shuler that he had inmate Smith, Dantlee #250509 [who] had assaulted inmate Thomas, Joshua #371791 with a weapon. Lt. Shuler notified me that inmate Thomas Smith was secured in his cell with the weapon stating that he does not want to give it up and that he was refusing to come out . . . . I gave inmate Smith several orders to throw the weapon out of the flap and exit the cell to no avail. Inmate Johnson responded "I aint [sic] giving up no weapon." I then asked Lt. Shuler did he enter the cell with weapon. Lt. Shuler stated "yes." I then gave another directive to throw out the weapon and exit the cell to no avail. I then administered one burst of chemical munitions toward inmate Smith's facial area while giving another directive to throw out the weapon. Inmate Smith then stated "alright the weapon I had is flushed in the toilet pipe I cant [sic] get to it the only other thing is this" while kicking a [sic] altered pen out of the door. I then gave a final directive to come to the flap and cuff up in which inmate Smith complied.

Id. The report concludes with a description of Smith being taken to medical. Id.

In his objections, Smith challenges the facts presented in these two reports. ECF No. 57 at 3–6. He claims that he did not have a weapon at the time of the either the fight with inmate Thomas or when he was put in his cell after the fight, that he was cooperative at all times, and that the use of chemical munitions was, therefore, excessive. Id. Smith

specifically points to the line in Lt. Shuler's incident report indicating that Smith "ran up on [inmate Thomas] and started hitting with his right hand." ECF No 57 at 3. He argues that this proves that he had no weapon. ECF No. 57 at 3. He then asserts that, because Lt. Shuler's report does not mention the use of chemical munitions, the report was evidently "doctored up to cover up the Excessive Force used illegally." Id. at 3–5. However, he provides no further evidence to support this accusation.

Smith then turns to Cpt. Spikes's report, id. at 5, which does mention the use of chemical munitions against Smith, ECF No. 48-1 at 5. Smith claims that Cpt. Spikes's report cannot be trusted for three reasons: (1) it is not time stamped; (2) it was not signed off on by a supervisor, major, or responsible authority; and (3) it features two "mystery inmates": Thomas Smith and Inmate Johnson. ECF No. 57 at 5. Smith also claims, without pointing to any evidence, that Cpt. Spikes smiled while administering the chemical munitions and that he did so "maliciously and sadistically." Id. at 4–6.

Much like in his first objection, Smith raises no new arguments in his second objection that were not previously asserted in his response to defendants' motion. See ECF Nos. 48 at 6–9; 57 at 3–6. However, to the extent de novo review is required, the court does not find that arguments raised by Smith require the court to disturb the magistrate judge's findings.

First, the evidence Smith points to does not call the authenticity of the reports into question. While the court must view all evidence in the light most favorable to the non-movant, Smith is not entitled to unreasonable inferences. See Adams v. Am. Optical Corp., 979 F.3d 248, 258 (4th Cir. 2020) (explaining that the district court need not make unreasonable inferences in favor of the non-moving party). It would be unreasonable if

the court were to assume, based solely on the evidence Smith provides, that the incident reports were the product of a cover-up against him. For instance, while Smith is correct that Cpt. Spikes's incident report references inmates named Thomas Smith and Inmate Johnson, it is clear from context that these were both intended to reference Smith himself, see ECF No. 41-2 at 10, and no reasonable jury could conclude otherwise. Further, without additional evidence, none of the other deficiencies Smith points to—the lack of a time stamp or signature—is evidence that the information contained within the report is incorrect.

Second, even if the Smith's identified evidence called the incident reports into question, that would not be evidence that Smith's alternative version of events is true. Smith would still be without evidence to support his claim that Cpt. Spikes smiled or otherwise acted "maliciously and sadistically" while administering the chemical munitions. ECF No. 57 at 4–6. On the contrary, Cpt. Spikes submitted an affidavit that largely mirrored the version of events described in his incident report. See ECF No. 41-2 ¶¶ 3–6. Specifically, he described Lt. Shuler telling him that Smith had a weapon, Smith refusing to give up his weapon, Smith's admission that he flushed the weapon down the toilet, and his administering "one short burst of chemical munitions (6 grams of MK4 Sabre Red #47) into the cell toward [Smith's] facial area." Id. Because Smith has not provided evidence for, or even argued that, the claims Cpt. Spikes made in his affidavit are untrue, the facts as presented in Cpt. Spikes' affidavit remain undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" (emphasis added)).

Third, even if the court were to accept Smith's argument that the line in Lt. Shuler's report about Smith "hitting [inmate Thomas] with his right hand," ECF No. 48-1 at 6, was proof that Smith did not have a weapon, such evidence would still be insufficient to support Smith's claim. The relevant inquiry is not simply whether Smith had a weapon. Rather, to satisfy the subjective component of Smith's claim, the inquiry is whether Cpt. Spikes "reasonably perceived" a "threat to the safety of staff and inmate," and whether his response to the perceived threat was excessive. Whitley, 475 U.S. at 321–22 ("Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." (emphasis added)).

The Fourth Circuit has made clear that "the use of mace on an unruly or 'recalcitrant' prison inmate, though confined to his cell, is not plainly per se unconstitutional." Bailey v. Turner, 736 F.2d 963, 970 (4th Cir. 1984). Rather, the court evaluates whether use of chemical munitions was proper based on the Whitley factors. Watkins v. Cross, 2019 WL 1472887, at *4 (D.S.C), report and recommendation adopted, 2019 WL 1470248 (D.S.C.), aff'd sub nom. Watkins v. Jones, 771 F. App'x 332 (4th Cir. 2019).

The unrefuted evidence in this case shows that Cpt. Spikes believed Smith had a weapon in violation of prison rules that he was refusing to give up. ECF No. 41-2 ¶ 3. Cpt. Spikes first attempted to resolve the situation without using chemical munitions, but Smith failed to comply. Id. ¶ 5. Fearing that any attempts to enter the cell and remove

the weapon would cause injury to Smith and the prison officials, Cpt. Spikes administered one short burst of chemical munitions, and Smith was then immediately taken to receive medical attention. Id. ¶¶ 5–9. Based on the circumstances Cpt. Spikes describes, which are unrefuted by any evidence offered by Smith, the court finds that Cpt. Spikes' actions were objectively reasonable as a matter of law. See Whitley, 475 U.S. at 320–21; Watkins, 2019 WL 1472887, at *3–5. For these reasons, the court adopts the R&R and grants defendants' motion as to Smith's excessive force claim.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the magistrate judge's report and recommendation, ECF No. 54, and **GRANTS** defendants' motion for summary judgment, ECF No. 41.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**September 29, 2023**
**Charleston, South Carolina**